**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                    :
IN RE:                              :      CHAPTER 13
                                    :
TRACY STAMPER,                      :
                                    :      CASE NO. 03-49235 (NLW)
                                    :
              Debtor.               :
_____ :      **OPINION**

FILED
JAMES J. WALDRON, CLERK

March 17, 2008

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: /s/Diana Reaves, Deputy

**Before:**     **HON. NOVALYN L. WINFIELD**

**A P P E A R A N C E S :**

Virginia E. Fortunato, Esq.
Mark Goldman, Esq.
A Professional Corporation
55 Washington Street
East Orange, NJ 07017
Attorneys for Debtor

Thomas R. Dominczyk, Esq.
Maurice & Needleman, PC
5 Walter E. Foran Blvd., Suite 2007
Flemington, NJ 08822
Attorneys for Landmark America, Inc.

This matter came before the court on the Debtor's motion to find a creditor in violation of the automatic stay for receiving postpetition payments arising from settlement of a prepetition debt. The creditor defended against the motion on the ground that the Debtor had merely made a voluntary payment, which is not an act prohibited by the automatic stay. For reasons set forth below, the court finds in favor of the Debtor.

## JUTISDICTION

The following constitutes the bankruptcy court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G). The Court has jurisdiction to determine this matter under 28 U.S.C. § 1334 and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984.

## STATEMENT OF FACTS

The instant bankruptcy case began on December 4, 2003. On that date Hugo L. Moras, Esq. ("Moras") filed a bare Chapter 13 petition on behalf of Tracy Stamper ("Debtor"). The missing schedules, statement of financial affairs and Chapter 13 plan were filed approximately two weeks later. Unfortunately, it appears that several creditors were not listed. To rectify that omission, in February 2004, May 2004 and again in June 2004 Moras made three attempts to properly file amended schedules. His June 2004 effort was successful and the court issued its standard order requiring that the added creditors be served with 1) a copy of the order, 2) a copy of the chapter 13 plan, and a notice advising creditors of various key dates in the Chapter 13 case, as well as the

ability to examine the debtor by means of a 2004 examination.  Unfortunately, Moras never gave notice to the added creditors as required by the standard order.

United National Bank ("UNB") was among the creditors listed by Moras in each of his efforts to amend the Debtor's schedules.  The February 2004 proposed amendment listed UNB on Schedule F as an unsecured creditor with a claim amount of $18,000.  Ultimately, in the June 2004 amended schedules, UNB was listed on Schedule D as holding a secured claim in the amount of $20,000.  Curiously, Moras did not amend the Debtor's plan to treat this new secured claim.  The Debtor's plan was confirmed on June 18, 2004.  It provided only for curing prepetition mortgage arrears owed to Central Mortgage Co. ("Central"), and after cure of the mortgage arrears, to pay the remaining funds, pro rata, to the unsecured creditors.  Moras filed various proposed amended plans thereafter, but none provided any treatment for UNB's claim, nor was any objection to the UNB claim filed by Moras.

Eventually, in or about October 2005 the Debtor, with the assistance of Moras, undertook the sale of 1828 Whittier Street, Rahway, New Jersey (the "Real Property").  By order dated November 16, 2005 the sale was approved.  However, the sale never closed.

It appears that in November 2005, as part of his effort to sell the Real Property, the Debtor contacted the attorneys for Landmark America, Inc. ("Landmark") with an offer to settle the UNB claim for $7,500.  (Kenneth Caldwell Certification ("Caldwell Cert.") ¶ 12.)  By an assignment effected in July 2002 Landmark became the holder of the UNB claim.  *Id.* ¶ 7.  In fact, on January 21, 2000, UNB had reduced its claim to a judgment in the amount of $20,126.85, and the judgment was docketed on February 1, 2000 under Judgment No. J-18596-00.  *Id.* ¶¶ 3, 4.

Stamper claims that he contacted Landmark to settle the claim because he did not know

whether the debt would be discharged. (Debtor's Certification ¶ 2.) He also suggests that he approached Landmark because Moras was not responding to his inquiries. *Id.* However, Debtor concedes that he never informed Landmark that he was in a bankruptcy. *Id.*

Although Debtor and Landmark settled on payment of $10,000 by December 20, 2005, no payment was made by that date. (Caldwell Cert. ¶¶ 12, 14.) In February 2006 Debtor again contacted Landmark's attorney to effect a settlement for $10,000, but again did not make a payment. *Id.* ¶ 15.

Sometime in September 2006 Debtor again contacted Landmark's attorneys to settle the claim. *Id.* ¶ 16. In that same month, on September 13, 2006 Landmark made an inquiry regarding Debtor's credit history. (Fortunato Certification ("Fortunato Cert.") ¶ 6.) The credit report referenced the Debtor's pending Chapter 13 case as well as the two prior cases. *Id.* Ex. G.

Again in November 2006 Debtor contacted Landmark regarding a settlement, this time dealing directly with Landmark rather than its attorneys. Landmark and the Debtor reached an agreement to satisfy the claim by payment of $10,000 in two installments: $4,500 payable by December 29, 2006 and $5,5000 payable by January 31, 2007. (Caldwell Cert. ¶ 17.) All of the payments were made and Landmark gave the Debtor a warrant of satisfaction.[1] *Id.* ¶¶ 18-21. The court presumes that this negotiation was in furtherance of the Debtor's pro se effort to refinance the Real Property, since on November 28, 2006 the court received correspondence from the Debtor requesting permission to refinance. Notably, all of the negotiations with Landmark and the request to refinance were done without the assistance of Moras. In fact, Moras moved to be relieved as

---

[1]The payments actually made were slightly different from what was agreed upon. The Debtor paid $4,319.50 on December 19, 2006, $5,314.00 on January 31, 2007 and $366.50 on February 5, 2007.

4

counsel and the court granted such relief on December 27, 2006.[2]

In January 2007 the Debtor filed a pro se motion to refinance his Real Property. There were a number of problems with the motion resulting in a number of adjournments. Fortunately by late March 2007, Debtor retained experienced bankruptcy counsel who was able to assist him not only with the refinance motion, but also with Central's motion for relief from stay and the Chapter 13 Trustee's motion to dismiss for failure to make plan payments.

In responding to the various motions, Debtor's counsel discovered that payments were not made to the Chapter 13 Trustee because the Debtor applied the plan payments to funding the settlement with Landmark. Debtor's counsel first telephonically contacted Landmark's counsel to request return of the funds. Landmark declined the request. By letter dated July 26, 2007, Debtor's counsel formally demanded return of the $10,000 paid to Landmark on the grounds that (i) as a prepetition debt Landmark's debt should be paid through the Chapter 13 plan, and (ii) the payment was in violation of § 362(a). (Fortunato Cert. Ex B.) In response, Landmark denied that any of its actions violated the stay given the fact that the Debtor's payment was voluntary. It further advised Debtor's counsel that any motion to compel a turnover of the funds or to impose sanctions under § 362 would be met with a Rule 9011 motion. *Id.* Ex. E. Subsequently, Debtor's counsel advised Landmark's attorney that the Debtor would consent to the filing of a late proof of claim by Landmark, and the vacating of the warrant of satisfaction. Landmark was still not persuaded to return the funds. The refusal to voluntarily return the $10,000 caused Debtor's counsel to file the instant motion against Landmark for violation of the automatic stay.

---

[2] It must be pointed out that the Debtor desired to proceed pro se because of his inability to regularly consult with Moras.

**DISCUSSION**

By its very terms and except as provided in subsection (b), § 362(a) imposes a stay automatically upon the filing of a bankruptcy petition. Courts have long recognized that the automatic stay exists without regard to whether creditors have notice of the bankruptcy filing. "The stay of § 362 is 'automatic' because it is triggered as against all entities upon the filing of the bankruptcy petition, irrespective of whether the parties to the proceedings stayed are aware that a petition has been filed." *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991). In *Maritime*, The Third Circuit also recognized that:

> The automatic stay serves several purposes. First, it gives a bankrupt a breathing spell from creditors by stopping all collection efforts, all harassment, and all foreclosure actions. The stay permits a bankrupt to attempt a repayment or reorganization plan or simply to be relieved of the financial pressures that drove him into bankruptcy. Second, the stay protects creditors by preventing particular creditors from acting unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors.

*Id.* (citation omitted); *see also* H.R. Rep. No. 95-595, at 340 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6296-97; S. Rep. 95-989, at 49 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5835.

The court considers the following provisions to be applicable:

> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (6) Any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

11 U.S.C. § 362(a).

Landmark contends that it did not violate the automatic stay because the Debtor voluntarily approached Landmark with a settlement offer that Landmark merely accepted. To support its position that voluntary payment of prepetition debt is not violative of § 362(a) Landmark relies on *Franklin v. L.J. Walsh Co. (In re Franklin)*, No. 5-89-13, 1991 Bankr. LEXIS 1220 (Bankr. D. Minn. January 31, 1991) and *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417 (6th Cir. 2000). It cites *Franklin* for the court's statement that the automatic stay "does not – and never has – barred a debtor from voluntarily paying a part of or all of a pre-petition debt owing to a creditor." *Franklin*, 1991 Bankr. LEXIS 1220 at *9. Further, it relies on the statement in *Pertuso* that "a secured creditor's acceptance of voluntary payments does not run afoul of the automatic stay as long as the payments have not been induced improperly." *Pertuso*, 233 F.3d at 424.

The court finds that Landmark's reliance on these two cases is misplaced. Neither case involved a Chapter 13 debtor's use of estate funds. In *Franklin*, a prior state court proceeding had already determined that the debtors payments to the creditor were voluntary. That ruling was found by the bankruptcy court to be res judicata on the issue of voluntary payment. *Franklin*, 1991 Bankr. LEXIS 1220 at *13. Thus the bankruptcy court never decided the issue. In *Pertuso*, the debtors claimed that Ford Motor Credit Co. ("Ford") violated the automatic stay by *inter alia*, requiring the debtors to make their first payment under the reaffirmation agreement while the automatic stay was still in effect. *Pertuso*, 233 F.3d at 423. The debtors were attempting to draw a distinction between a secured creditor's right to solicit a reaffirmation agreement and the ability to collect under it. *Id.* at 424. The Sixth Circuit was unimpressed by the argument. It pointed out that if non-coercive requests for payment are not barred by the automatic stay, then "it is hard to see anything

7

problematic in the acceptance of payment when the request has been honored." *Id.* Further, it noted that the protections afforded by § 524(c), the court's contempt power, and the debtor's ability to rescind the reaffirmation agreement protect the debtors from exploitation. *Id.* It is in this context that the court remarked that voluntary acceptance of payments do not violate the stay.

By contrast, the Chapter 13 debtor in the case at hand has a confirmed plan which is funded from his postpetition income. Importantly, under § 1306 all property that a debtor acquires after commencement of the case and all earnings from services performed by the debtor after case commencement are property of the estate. The Debtor's funding of the settlement with Landmark had a direct and immediate affect not only on the Debtor but also on his other creditors because he fell behind in his payments to the Chapter 13 Trustee, who then moved to dismiss his case.

While Debtor's decision to negotiate a settlement was voluntary in the sense that he initiated the settlement talks, it certainly wasn't an informed decision. Debtor was often not able to reach his attorney. Indeed, from the court's observation of the conduct of this Chapter 13 case, the Debtor was either under– or unrepresented until retention of current counsel.

It does not appear that the Debtor had any inkling that Moras should have considered an objection to Landmark's claim. As argued by the Debtor's current counsel, it may very well be that Landmark's lien status can be challenged and avoided so that it is entitled to payment only as an unsecured claim. If Landmark should be treated as an unsecured creditor, its retention of the $10,000 results in payment to it many times greater than that of the Debtor's other unsecured creditors. This would plainly be a result at odds with the Debtor's Plan and with one of the purposes of the automatic stay. The Court finds that by accepting the settlement payments and applying it to the pre-petition debt Landmark violated § 362(a)(2), (3) and (6). Section 362(a)(2) was transgressed

because the settlement was paid to satisfy Landmark's judgement against the Real Property. By obtaining the settlement payments Landmark certainly obtained "property from the estate" within the meaning of § 362(a)(3). Finally, negotiating the settlement proceeds certainly falls within the language "any act to collect . . . a claim against the debtor that arose before the commencement of the case . . . ." 11 U.S.C. § 362(a)(6).

However, the Court finds it possible that Landmark may not have knowingly violated the automatic stay by its conduct in connection with the settlement. Although it seems likely to the court that the September 2006 inquiry Landmark made regarding the Debtor's credit history put it on notice that the Debtor was in a pending Chapter 13 case, it is possible that Landmark's attorneys were not informed of the results of the credit inquiry. However, exactly what Landmark and its counsel knew, and when they actually had knowledge is not clear.

It is also possible they did not did not fully apprehend the significance of the Chapter 13 filings. After all, without knowledge of the bankruptcy, they had been negotiating solely with the Debtor since November 2005. It certainly does not appear that they were ever aware that the Debtor had bankruptcy counsel in that time period. Moreover, in November 2006 the Debtor was then negotiating directly with Landmark personnel. At the time that the final settlement agreement was reached it is possible that the Landmark employees did not understand the significance of the Chapter 13 filing. These are factual issues that require further evidence. However, as explained below, it is not necessary to address these issues.

If a violation of the automatic stay is without knowledge of the bankruptcy, there is no reason to penalize a party. *Lansdale Family Restaurants, Inc. v. Weis Food Service*, 977 F.2d 826, 829 (3d Cir. 1992). However, a stay violation is not the equivalent of a strict liability tort. For example,

although the Third Circuit views acts in violation of the automatic stay as void ab initio, it also recognizes that there are circumstances in which it would be inappropriate to not validate the creditor's action. *See In re Siciliano*, 13 F.3d 748, 751 (3d Cir. 1994)(bankruptcy court had authority to annul the automatic stay to validate sheriff's sale); *In re Meyers*, 491 F.3d 120, 127 (3d Cir. 2007)(under § 362(d) the bankruptcy court has authority to make exceptions to and to annul the automatic stay). In a similar vein, in *In re Smith Corset Shops, Inc.*, 696 F.2d 971 (1st Cir. 1982), the First Circuit found that it would be a misuse of the automatic stay to permit the Debtor to obtain damages from a landlord, who without knowledge of the bankruptcy, completed eviction of the Debtor and removal of its inventory to a warehouse. The facts relied upon by the First Circuit were the following:

> The [landlords] not only acted without knowledge of the bankruptcy filing but did so after having notified Smith and securing a court order. They personally did not dispossess Smith; the constable did so acting under the execution. Smith, for its part, not only had advance notice of the proposed action, it apparently had an agent on hand while the property was moved. Yet Smith made no effort to advise either the [landlords], the court, or the constable of the pending bankruptcy action until the property had been moved and stored. If successful in its conversion action, Smith would extract from the innocent [landlords] the full original cost of an inventory which may have become unmarketable.

696 F.2d at 977. Based on these facts the court held "that [Debtor] could not remain stealthily silent when it knew that the goods were being moved pursuant to court order and then turn around and successfully sue the [landlord] for the alleged conversion of the goods." *Id.*

However, the facts of the present matter do not weigh in favor of annulling the stay or making other exceptions to the automatic stay. The Debtor's prospect for successfully completing his plan has been seriously impaired by the payment of $10,000 in estate funds to Landmark. Return

of the funds must be made in order to permit the Debtor to continue with his Chapter 13 case. Like the debtor in *Smith Corset*, it was inappropriate for the Debtor in the present matter to remain silent about his bankruptcy. However, unlike the landlord in *Smith Corset*, there is no injury to Landmark from the Debtor's silence. The Debtor has agreed to allow Landmark to file a late claim, and to vacate the warrant of satisfaction. (Fortunato Cert. ¶ 5.) Landmark thus suffers no prejudice, much less extreme prejudice. Of course, the Debtor will have to provide for Landmark's claim in his plan and that may mean Landmark will face an objection to its claim. But, that is the same position it would have enjoyed had Moras properly given Landmark notice of the bankruptcy in June 2004 when he amended the Debtor's schedules.

Finally, although the court finds it reasonable to assume that Landmark's conduct regarding the settlement of its lien claim might not have been a knowing violation of the automatic stay, it does find that Landmark's refusal to return the funds to the Debtor constitutes a violation of §362(a)(3) because it is an act exercising control over property of the estate. Knowing retention of estate property violates the automatic stay. *Cal. Employment Dev. Dep't v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147, 1151 (9th Cir. 1996). "Withholding possession of property from a bankruptcy estate is the essence of 'exercising control' over possession." *TranSouth Fin. Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 682 (B.A.P. 6th Cir. 1999). Accordingly, as the Debtor has been injured by Landmark's willful violation of the automatic stay, the Debtor is entitled to recoup his attorneys' fees incurred to recover the $10,000 as damages under § 362(k). Within fourteen (14) days of this decision, Debtor's counsel shall file with the court and serve on Landmark and its counsel, a statement of services rendered. Landmark shall have ten (10) days thereafter to review the statement of fees and file any objections.

**CONCLUSION**

The court assumes that Landmark's obtaining $10,000 of estate funds in satisfaction of its prepetition lien claim was not a knowing violation of the automatic stay. Nonetheless, the automatic stay was violated and the funds must be returned. Moreover, the retention of said sum after the Debtor's request that it be returned was a knowing violation of the automatic stay. As such, under § 362(k) Debtor is entitled to recover his counsel fees as damages.

Dated: 3/17/08

/s/ Novalyn L. Winfield
NOVALYN L. WINFIELD
United States Bankruptcy Judge